UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SUAD KARAHODZIC,                         )
                                         )
        Plaintiff,                       )
                                         )
                                         )
vs.                                      )   Case No. 4:19-CV-00797-SEP
                                         )
ANDREW M. SAUL,[1]                       )
                                         )
                                         )
        Defendant.                       )

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of

Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of

Plaintiff Suad Karahodzic ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of

the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act").  Because

there is substantial evidence to support the decision denying benefits, the Court will affirm the

Commissioner's denial of Plaintiff's application.

I.    **BACKGROUND**

On August 14, 2015, Plaintiff applied for DIB, alleging that he had been unable to work

since July 20, 2012.  (Tr. 228-34).  On October 29, 2015, he applied for SSI.  (Tr. 235-40).  In

_____

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security.  Pursuant to Federal
Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as Defendant in
this action.  No further action needs to be taken to continue this suit by reason of the last sentence of 42
U.S.C. § 405(g).

both applications, Plaintiff alleged disability beginning July 20, 2012, when he was 40 years of age, which is defined as a younger individual for purposes of the Act.  *See* 20 C.F.R. § 404.1563. He alleged disability based on a spinal injury.  (Tr. 272).  His applications were initially denied on December 10, 2015.  (Tr. 111).  Plaintiff subsequently filed a Request for Hearing by Administrative Law Judge ("ALJ").  (Tr. 120).

Plaintiff, who was represented by counsel, testified at his hearing that he is unable to work due to chronic back pain and numbness in his right leg after undergoing lumbar fusion surgery.  (Tr. 17).  He further testified that he had originally injured his back after falling off a ladder at work.  *Id*.  He stated that he spends the majority of his days on the couch watching television, since it is uncomfortable for him to sit or stand for very long.  *Id*.  He also testified that it was difficult to walk, and, when the ALJ asked him how far he could walk, he stated that he would have to take a seat after "under a mile, like 500 meters."  (Tr. 46).  In addition to his physical complaints, Plaintiff also alleged anxiety and depression, and testified that he spent a great deal of time lying down and worrying.  (Tr. 17).

In an opinion issued on August 22, 2018, the ALJ found Plaintiff was not under a "disability" as defined in the Act.  (Tr. 9-28).  Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's ("SSA") Appeals Council.  (Tr. 7-8).  On February 6, 2019, the SSA's Appeals Council denied his Request for Review.  (Tr. 1).  Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses.  The

Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); [2] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611.  At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any

---

[2] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities;" if the claimant does not have a severe impairment, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611.  At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611.  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations."  *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e).  At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step.  *Id.*  At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled.  *Moore*, 572 F.3d at 523.  At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

4

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 20, 2012; that Plaintiff has the severe impairments of lumbar degenerative disc disease, status post lumbar fusion, anxiety, and depression; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 14-15).  The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except that he can only occasionally reach overhead bilaterally, stoop, kneel, crouch, and crawl; he is able to understand, remember, and carry out routine instructions consistent with SVP levels 1 and 2 type jobs; and he is limited to jobs that do not require significant communications in English.  (Tr. 17).

The ALJ found that Plaintiff is unable to perform any of his past relevant work.  (Tr. 20).  However, considering Plaintiff's age, education, and work experience, and in reliance on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform occupations including document preparer (Dictionary of Occupational Titles ("DOT") No. 249.587-018, sedentary exertion level, 45,236 jobs in the national economy), circuit board assembler (DOT No. 726.684-110, sedentary exertion level, 59,026 jobs in the national economy); and final assembler of optical goods (DOT No. 713.687-018, sedentary exertion level, 8,524 jobs in the national economy).  (Tr. 21).  The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from July 20, 2012, the alleged onset date, through August 22, 2018, the date of the decision.  (Tr. 22).

IV.   **STANDARD FOR JUDICIAL REVIEW**

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Pate-Fires*, 564 F.3d at 942.  *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision.  *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012).  However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."  *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds:  (1) the ALJ did not properly weigh the medical opinion of Plaintiff's treating psychiatrist; and (2) the ALJ did not properly evaluate Plaintiff's subjective complaints of pain.  Plaintiff argues that these errors caused the ALJ to reach a flawed RFC that failed to fully capture the consequences of his mental impairments and physical pain.  In response, the Commissioner maintains that the ALJ properly evaluated the medical opinions of record, as well as Plaintiff's complaints of pain, and based the RFC on substantial evidence in the record as a whole.

A claimant's RFC is "the most a claimant can do despite his limitations."  *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  It is the ALJ's responsibility to determine a claimant's RFC "based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'"  *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, the ALJ reviewed Plaintiff's testimony and medical records, examined the consistency of his subjective complaints with the evidence of record, analyzed each of the medical opinions in the record, and made the following findings:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except he is limited to occasionally reaching overhead bilaterally, stooping, kneeling, crouching and crawling.  The claimant is limited to routine tasks consistent with SVP 2 type jobs and no jobs that require significant communications in English.

(Tr. 20).  In reaching her decision, the ALJ considered and gave "moderate" weight to the opinion of the consultative psychological expert, Dr. Marsha Toll ("Dr. Toll"), who reviewed the record and found that while Plaintiff's depression and symptoms of PTSD impact his

concentration and mood, he exhibited no more than mild to moderate mental limitations, consistent with an ability to perform a range of routine work tasks.  (Tr. 16, 101).  The ALJ also considered and assigned "minimal" weight to Plaintiff's treating psychiatrist, Dr. Rashid Zia ("Dr. Zia"), finding his opinion that Plaintiff's mental condition would cause him to be "off-task" at least ten percent of the time to be unsupported by the record.  (Tr. 16, 1461).

## A.  ALJ's Evaluation of the Medical Opinions Regarding Mental Status

As noted, the ALJ assigned moderate weight to the opinion of the state agency psychological consultant, Dr. Toll.  (Tr. 16).  Dr. Toll opined that Plaintiff was "not significantly limited" in his ability to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) to perform at a consistent pace without an unreasonable number and length of rest periods; (3) to understand, remember, and carry out short, simple instructions; (4) to work in coordination with or in proximity to others without being distracted by them; (5) to maintain socially appropriate behavior; (6) to get along with coworkers and peers without distracting them or exhibiting behavior extremes; (7) to ask simple questions or request assistance; (8) to perform activities within a schedule; (9) to maintain regular attendance; (10) to make work-related decisions; and (11) to be punctual.  (Tr. 105-06). Dr. Toll also opined that Plaintiff is "moderately limited" in his ability to (1) understand, remember, and carry out detailed instructions; (2) to maintain attention and concentration for extended periods; (3) to interact appropriately with the general public; (4) to accept instructions and respond appropriately to criticism from supervisors; and (5) to respond appropriately to changes in the work setting.  (Tr. 105-06).  Dr. Toll also stated that, while Plaintiff reports some symptoms of PTSD and depression that impact his concentration and mood stability, these symptoms do not rise to the level of a "marked impairment," and he "can perform at least simple,

repetitive work."  (Tr. 101).  She further opined that his "back injury and physical issues seem to

be the primary reason for not working."  *Id*.  The ALJ assigned moderate weight to Dr. Toll's

opinion, as she found it to be consistent with the evidence in the record regarding Plaintiff's

longitudinal mental status examination findings and his mental health treatment.

Plaintiff's psychiatrist, Dr. Zia, has treated Plaintiff since May of 2015, during which

time Plaintiff has presented with symptoms of depression, anxiety, and PTSD.  (Tr. 455).  Dr.

Zia also provided the ALJ with an opinion regarding Plaintiff's mental status.  (Tr. 1461).  Dr.

Zia opined that Plaintiff's symptoms of irritability, sadness, agitation, distraction, poor

concentration, and flashbacks would cause Plaintiff to be "off-task" for ten percent or more of

the workday.  Dr. Zia further opined that Plaintiff's symptoms would cause some absenteeism,

though he did not opine as to how frequently Plaintiff's symptoms would cause Plaintiff to miss

work.  *Id*.  Dr. Zia also opined that Plaintiff's symptoms would require him to take unscheduled

breaks for two to three hours out of every eight-hour workday.  *Id*.

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration

finds that a treating source's medical opinion on the nature and severity of a claimant's

impairments "is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

record," the Social Security Administration will give that opinion "controlling weight."  20

C.F.R. § 404.1527(c)(2).[3]  Where the ALJ does not give a treating physician's opinion

controlling weight, the ALJ evaluates the opinion based on several factors, including the

consistency of the opinion with the record as a whole, the length of the treatment relationship

---

[3] These regulations apply to claims filed before March 27, 2017.  For claims filed after March 27, 2017,
the rule that a treating source opinion is entitled to controlling weight has been eliminated.  *See* 20 C.F.R.
§ 404.1520c(a).  Plaintiff filed his application in 2015, so the Court will use the version of the regulations
that applies to claims filed before March 27, 2017.

and the frequency of examination, the nature and extent of the treatment relationship, the

evidence provided by the source in support of the opinion, and the level of specialization of the

source.  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ may discount a treating physician's opinion

where, for example, "other medical assessments are supported by better or more thorough

medical evidence," *Goff*, 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is

inconsistent with . . . clinical treatment notes," *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir.

2009).  In weighing a treating source opinion, it is the ALJ's duty to resolve conflicts in the

evidence, and the ALJ's finding should not be disturbed so long as it falls within the "available

zone of choice."  *See, e.g.*, *Hacker v. Barnhart*, 459 F.3d 934, 936-38 (8th Cir. 2006).

In evaluating Dr. Zia's opinion, the ALJ stated:

> The June 2018 Medical Source Statement submitted by the claimant's
> treating psychiatrist, Rashid Zia, M.D., is afforded minimal weight in this
> decision.  There is no persuasive support in the record for a finding the
> claimant would be off-task for at least ten percent of the day, would require
> unscheduled breaks or would miss excessive days from work.  Dr. Zia's
> own treatment notes from June 2017 state the claimant's "main issue" is
> pain and his depression is secondary to his pain.  The claimant's mental
> status examinations are routinely unremarkable throughout the record, so
> it is unclear what Dr. Zia is basing these statements upon.  Normal mental
> status examinations are also found consistently throughout the records of
> claimant's other treatment providers.  There is nothing convincing in the
> record to suggest the claimant has experienced debilitating mental health
> symptoms.

(Tr. 16).

After careful review of the record, the Court finds that the ALJ gave good reasons,

supported by substantial evidence, for discounting Dr. Zia's opinion, and that her assessment of

that opinion falls within the available zone of choice.  At the outset, the Court notes that although

the ALJ gave "minimal weight" to Dr. Zia's opinion, the ALJ did include fairly significant

mental limitations in the RFC, limiting Plaintiff to routine tasks consistent with an SVP 2.[4]  (Tr.

17).  These limitations partially account for Dr. Zia's opinion that Plaintiff has difficulties with

concentrating and avoiding distractions while staying on task.

The ALJ reasonably found, however, that certain limitations in mental functioning found

in Dr. Zia's opinion were not supported by examination findings in his own treatment notes or

elsewhere in the record.  Dr. Zia's treatment notes contain few objective findings or observations

that would support the opinions offered.  Indeed, Dr. Zia's treatment notes are quite sparse, and

consist mainly of boxes that he checked to indicate reported symptoms, as well as what appears

to be a written list of symptoms as reported by Plaintiff at each visit.

Plaintiff began treatment with Dr. Zia on May 27, 2015.  At that initial assessment, Dr.

Zia noted that Plaintiff reported sleep difficulties, sadness, and nightmares about the war in

Bosnia, in which Plaintiff served in combat.  (Tr. 451).  The treatment notes from this visit

contained the most thorough objective evaluation of Plaintiff's mental status, and they indicate

that Dr. Zia found Plaintiff to be normal in his dress and appearance; to exhibit normal speech

and thought patterns; to be normal in both mood and affect; that he was appropriately oriented to

time, place, and person; that he was of normal intellect; that he did not exhibit signs of

psychosis; and that he exhibited good judgment, impulse control, attention span, and insight.

(Tr. 454).  Dr. Zia diagnosed Plaintiff with depression, anxiety, and PTSD.  (Tr. 455).

At subsequent visits, Dr. Zia did not often record objective signs, instead merely noting

Plaintiff's subjective descriptions of how he was feeling.  At many visits, Plaintiff reported not

sleeping well and feeling sad, as well as having nightmares, feeling tired, feeling pessimistic,

feeling upset about his back pain, and being worried about finances due to being unemployed.

---

[4]  SVP 2 correlates to unskilled work with "simple duties," and requiring "little or no judgment" in order
to successfully accomplish the necessary tasks.  *See* 20 C.F.R. § 416.968(a).

(Tr. 447, 448, 449, 450, 451, 454, 962, 963, 964, 966, 968).  While Dr. Zia at times noted
impaired concentration and depressed mood or labile affect, he also always noted that Plaintiff
had no suicidal ideation and had normal, intact thought processes and normal appearance.  (Tr.
447-461, 960-70, 1455-56).  Although these notes are certainly consistent with a finding that
Plaintiff had some significant mental symptoms, the ALJ reasonably found that they did not
support the severe limitations contained in Dr. Zia's opinion.  Upon review of the record, the
Court finds that the record supports the ALJ's assignation of only minimal weight to Dr. Zia's
opinion.  In reaching her determination, the ALJ reasonably considered several relevant factors,
as further discussed below.

First, the ALJ reasonably considered the fact that, aside from Dr. Zia's very first
treatment note, Dr. Zia's findings contained very few objective findings or observations to
support his opinions.  (Tr. 24).  "[A]n ALJ may discount a treating source opinion that is
unsupported by treatment notes."  *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016).  *See
also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to
support a medical opinion, particularly medical signs and laboratory findings, the more weight
we will give that medical opinion.").

Second, Dr. Zia's notes indicated that Plaintiff's impairments showed some improvement
with medication and treatment.  After prescribing Klonapin and Cymbalta for depression and
anxiety, Dr. Zia noted, at a visit on July 6, 2015, that Plaintiff was "not as sad or pessimistic."
(Tr. 449).  During his appointment on September 30, 2015, Dr. Zia's notes indicate that Plaintiff
reported that he felt "better."  (Tr. 461).  Similarly, at his next appointment on October 30, 2015,
Dr. Zia noted that Plaintiff reported that "he feels better."  (Tr. 460).  Dr. Zia noted, at an
appointment on May 3, 2017, that Plaintiff indicated his mood was better, and he felt a "modest

improvement in depression," and that he "sleeps OK."  (Tr. 961).  A condition that is

"controllable and amenable to treatment [ ] 'do[es] not support a finding of disability.'"  *Martise*

*v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 578 F.3d 838, 846 (8th

Cir. 2009)).  *See also Andrews v. Colvin*, 791 F.3d 923, 928-29 (8th Cir. 2015) (holding that the

ALJ properly gave little weight to a treating physician's opinion that was inconsistent with

treatment notes indicating that the claimant's pain was adequately controlled with medication).

Third, there is no indication in the record that it was recommended that Plaintiff undergo

intensive outpatient treatment, inpatient hospitalization, or other intensive treatment measures.

Instead, he merely saw his psychiatrist every one to three months and took medications.

Additionally, the record indicates that approximately two years after he started seeing Plaintiff,

Dr. Zia recommended therapy but indicated in his treatment notes that "Patient refused therapy."

(Tr. 1455).  It was reasonable for the ALJ to find that Plaintiff's conservative course of treatment

is at odds with the limitations described in Dr. Zia's opinion.  *See Reece v. Colvin*, 834 F.3d 904,

909 (8th Cir. 2016) (ALJ properly considered a treating physician's "routine, conservative

medical treatment" in discounting treating physician's opinions); *Perkins v. Astrue,* 648 F.3d

892, 898-99 (8th Cir. 2011) (holding that an ALJ properly discounted a treating physician's

opinion where, among other flaws, the treating physician's opinion was inconsistent with the

conservative nature of the treatment rendered).

Fourth, the ALJ reasonably considered other findings in the record that were inconsistent

with a finding that Plaintiff's mental impairments were disabling.  (Tr. 16).  For example, the

ALJ noted that Plaintiff indicated he had no problems getting along with others and had never

been fired from a job for inability to interact with others effectively and appropriately.  (Tr. 15,

284-85).  Additionally, at appointments with other physicians, Plaintiff reported experiencing no

depression or anxiety, no panic attacks, no sleep disturbances, and no suicidal ideation.  (Tr. 399, 407, 771).  For example, at a visit with his primary care physician, Dr. Emir Keric ("Dr. Keric"), on March 3, 2015, Plaintiff reported feeling no depression or anxiety.  (Tr. 407).  At a visit one month later with Dr. Keric, Plaintiff reported that he was not having any difficulty sleeping and was experiencing no panic attacks and no suicidal ideation.  (Tr. 399).

Fifth, the ALJ considered the fact that Dr. Zia's opinion was inconsistent with the other medical opinion evidence in the record, giving "moderate weight" to the opinion of the state agency non-examining psychological consultant, Dr. Toll, who determined that Plaintiff had no more than moderate limitations in his ability to perform work-related activities. (Tr. 24, 84).

In sum, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for discounting the opinion of Dr. Zia.  Although the ALJ did not explicitly discuss all of the factors listed in § 404.1527(c) in evaluating Dr. Zia's opinion, she was not required to do so.  *See Nishke v. Astrue*, 878 F.Supp.2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform a factor-by-factor analysis was not erroneous where the ALJ "explained [her] rationale in a manner that allows the [court] to follow [her] line of reasoning, including stating the amount of weight given to this evidence"); *Derda v. Astrue*, No. 4:09-CV-01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) (ALJ need not explicitly address each of the factors).  The ALJ discussed some of the factors in her decision, including the consistency of Dr. Zia's opinion with Dr. Zia's own treatment notes and other evidence.  (Tr. 16).  The ALJ also "explained [her] rationale in a manner that allows the [Court] to follow [her] line of reasoning."  *Nishke*, 878 F.Supp.2d at 984.  No more was required to comply with the relevant regulations.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion with regard to Dr. Zia's opinion.  However, "it is the ALJ's

14

function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom*, 680 F.3d at 1065 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).  It is not the role of this Court to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### B.  The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff's second argument is that the ALJ failed to properly evaluate Plaintiff's subjective complaints regarding his chronic back pain and numbness in his right leg.  In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[5]  In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence.  *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547

---

[5] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints.  However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms.  SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017).  That opinion clarifies that "subjective symptom evaluation is not an examination of an individual's character."  *Id.* at *2.  The factors to be considered remain the same under the new ruling.  *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529.

F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  *See also* SSR 16-3p, 2017 WL 5180304, at \*7-\*8 (describing several of the above factors, as well as evidence of treatment other than medication); 20 C.F.R. § 404.1529(c)(3) (same).

SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2007 WL 5108034, at \*10.  However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'"  *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's pain symptoms, consistent with SSR 16-3p and the relevant regulations, and that her assessment is supported by substantial evidence.  As a preliminary matter, the Court notes that the ALJ did not entirely discredit Plaintiff's complaints of pain in his back and numbness in his leg.  The ALJ acknowledged Plaintiff's testimony that he had back pain that affected his ability to stand, sit, or lift.  (Tr. 17, 45).  In his RFC, the SLJ limited Plaintiff to light work and to only occasionally stooping, kneeling, crouching, or crawling.  (Tr. 17).  Additionally, in reliance on the VE's testimony, she found him capable of jobs that were sedentary in nature.  (Tr. 21).

However, "[a]s is often true in disability cases, the question was not whether [Plaintiff] was experiencing pain, but rather the severity of [his] pain."  *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).  The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record.  *See Chaney v. Colvin*, 812 F.3d 672, 677-78 (8th Cir.

16

2016) (The ALJ may properly discount complaints of pain and limitation if they are inconsistent with the evidence as a whole.).  To the extent that the ALJ found that the objective medical evidence did not fully support the severity of Plaintiff's complaints, she did so only after conducting an appropriate analysis of the record and the relevant factors, and making specific findings regarding the consistency of Plaintiff's asserted symptoms with the record.  (Tr. 17-20).

    First, the ALJ reasonably found Plaintiff's reported daily activities somewhat inconsistent with his complaints of disabling pain.  (Tr. 18).  The record indicated that Plaintiff was capable of driving and was able to go out alone to get what he needs.  (Tr. 18, 37).  Plaintiff also indicated that he was able to look after his three young children when they were not in school (Tr. 18, 281), walk for a mile at a time without needing rest (Tr. 18, 285), and that he had no significant difficulty tending to his own personal grooming, other than reporting needing help with his socks and shoes.  (Tr. 18).  As further specific examples of Plaintiff's activity level, Plaintiff reported to consultative examining physician, Raymond Cohen, D.O., in December 2016, after his lumbar fusion surgery in July of that year, that walking greater than two miles increased his lower back and right leg pain.  (Tr. 19, 506).  Furthermore, in February 2017, Plaintiff reported to his treating physician, Dr. Keric, that he developed leg and back pain "upon walking more than a mile."  (Tr. 19, 778).

    While a claimant "need not prove [ ]he is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of disabling pain, and may be considered alongside other factors in assessing the severity of his subjective complaints of pain.  *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and

17

evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints); *Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding that a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (finding that in assessing a claimant's credibility, the ALJ properly considered the fact that the claimant took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals, did housework, shopped for groceries, and had no difficulty handling money); *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations."); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). Based on the foregoing, it was reasonable for the ALJ to conclude that Plaintiff's daily activities were not indicative of a disabling lumbar condition. (Tr. 19).

Second, the ALJ reasonably considered that the objective medical evidence did not support Plaintiff's subjective complaints regarding disabling back pain. (Tr. 18-20). Plaintiff's medical records from the relevant time period indicate that his health care providers regularly noted largely normal physical examination findings. (Tr. 21, 408-10, 425-26, 435, 458, 472-74, 571-72, 582, 588, 604, 655). For example, examination notes by Dr. Richard Gahn ("Dr. Gahn") from May 22, 2015, indicated that he had a negative bilateral straight leg test, experienced no sacroiliac joint tenderness, and exhibited normal posture and gait. (Tr. 369). Dr. Gahn's examination notes from June 9, 2015, indicated that Plaintiff's muscle bulk and strength were normal bilaterally, he had no numbness or weakness, and he had no tenderness of the spinous

18

process or sacroiliac joint.  (Tr. 371).  Additionally, one of Plaintiff's examining physicians, Dr.
Fangxiang Chen ("Dr. Chen"), noted on June 4, 2015, that he showed normal motor functions
and was well-developed and in no acute distress.  (Tr. 390).  At a later visit with Dr. Chen,
Plaintiff reported no weakness or numbness, and exhibited normal 5/5 strength in all extremities.
(Tr. 385).

Third, the ALJ also properly considered that Plaintiff reported some symptom
improvement from his treatments.  *See Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016)
(If an impairment can be controlled by treatment, it is not disabling.).  *See also Brace v. Astrue*,
578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or
medication, it cannot be considered disabling.") (internal quotations and citation omitted).
Before his surgery, the record indicates that Plaintiff reported relief of his back pain following a
series of lumbar epidural steroid injections.  For example, at a visit with Dr. Keric on May 6,
2015, Plaintiff reported "significant improvement in [his] lower back pain after [the] injection."
(Tr. 397).  Similarly, at a visit with Dr. Gahn on July 8, 2015, Plaintiff reported "significant
improvement" after receiving a lumbar facet joint injection, and that he was "having little back
pain."  (Tr. 376).  However, at a subsequent visit with Dr. Chen, he indicated that while he was
still experiencing improvement in his pain after the injection, he did not feel it was "sufficient."
(Tr. 385).  Plaintiff subsequently underwent a minimally invasive lumbar fusion surgery in July
of 2016.  (Tr. 18, 611-13).

The record indicates that the surgery was a success and resulted in mitigation of
Plaintiff's pain.  (Tr. 19, 491-92, 497, 773, 782, 784).  At a visit with Dr. Chen on July 26, 2016,
Plaintiff reported that his pain was improved, and Dr. Chen noted that Plaintiff was "moving all
extremities with normal strength and normal sensation," and that his "[s]trength is 5/5 throughout

[his] bilateral lower extremities." (Tr. 1117).  At his post-operative follow up appointment with

Dr. Chen on September 6, 2016, Dr. Chen noted that Plaintiff was "ambulating without issues,"

and exhibited normal strength and sensation. (Tr. 1115).  Additionally, x-rays taken at that same

visit indicated stable fusion hardware with no significant changes and no central canal stenosis.

(Tr. 19, 491-92).  At a visit with Dr. Keric on September 9, 2016, Plaintiff reported that his back

and leg pain was improving, and that he was "very satisfied" with the results of the surgery. (Tr.

782, 1113).  At a visit with Dr. Chen on October 25, 2016, Plaintiff reported that his lower back

pain was "much improved," and rated it a 1 or 2 out of 10. (Tr. 1111).  At that same visit,

Plaintiff indicated that the pain and numbness in his right leg was "completely resolved," rating

the pain level as a zero out of ten, and that he was "very happy with his postop course." *Id*.  At a

subsequent visit with Dr. Keric on November 9, 2016, Plaintiff indicated that his pain was a 4 or

5 out of 10 when the weather changes. (Tr. 780).  At a visit with Dr. Chen on March 28, 2017,

Plaintiff said that his lower back pain was much improved.  He characterized it as more akin to

"pressure" than pain and again indicated that it seemed related to changes in the weather. (Tr.

773).  Dr. Chen noted that he believed Plaintiff's symptoms at that time were "more likely

related to arthritis," and recommended physical therapy. *Id*.

Fourth, the ALJ considered the fact that Plaintiff's treatment records indicate relatively

moderate symptoms, a conservative course of treatment, the use of only over-the-counter anti-

inflammatory medication to treat his pain, and improvement with medication. (Tr. 21).  It was

proper for the ALJ to consider the relatively conservative nature of Plaintiff's treatment in

assessing his subjective complaints. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015)

(holding that ALJ properly considered claimant's relatively conservative treatment history when

evaluating credibility).

The Court finds that the ALJ conducted a proper evaluation of Plaintiff's claimed symptoms, considered relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record.  The evaluation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts."  *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted).  The Court must defer to that evaluation.  *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

**VI.   CONCLUSION**

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the medical opinion evidence in the record.  The Court also finds that the ALJ considered the medical evidence as a whole and made a proper RFC determination based on a fully and fairly developed record.  Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 21st day of September, 2020.

_Sarah E. Pitlyk_

_____

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE